# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **APEX INTERNATIONAL, LLC,** | § | |
| **ET AL.,** | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **V.** | § | **CASE NO. 3:19-CV-2242-K-BK** |
| | § | |
| **TRENT TRENNEPOHL, ET AL.,** | § | |
| **DEFENDANTS.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the district judge's *Order Referring Motion*, Doc. 65, before the Court is Plaintiffs' *Motion for Default Judgment on Their Claims Against Defendant Trent Trennepohl*, Doc. 62. Upon review, the motion should be **GRANTED IN PART**.

## I. BACKGROUND

Apex International, LLC ("Apex") and Greg Lindberg ("Lindberg") (collectively "Plaintiffs") filed suit against Defendants Jeffrey Serber and Trent Trennepohl ("Trennepohl") for breach of contract, trade secret misappropriation, breach of fiduciary duty, violations of the Texas Theft Liability Act, defamation, and fraud. *See* Doc. 18 at 1. This motion is confined to Plaintiffs' claims that Trennepohl breached his contract with Plaintiffs and defamed them. Doc. 18 at 15, 19; Doc. 62 at 5.

Plaintiffs filed their *Verified Second Amended Complaint*, Doc. 18, on November 4, 2019, and summons was issued to Trennepohl the next day, Doc. 20, which was returned as executed the next week, Doc. 22. To this date, Trennepohl has not filed an answer or other responsive pleading. On January 2, 2020, the Clerk of the Court entered a default against

Trennepohl on Plaintiffs' motion.  Doc. 28; Doc. 29.  Plaintiffs then filed the instant motion for default judgment while continuing to litigate against the active parties in the case.  Doc. 62. Since the motion *sub judice* was filed, all other parties have resolved their claims against each other, and only Plaintiffs' claims against Trennepohl remain.  *See* Doc. 102 (order dismissing case as to all defendants except Trennepohl).

## II. FACTS

Trennepohl worked for Apex as a security contractor providing close protection services for Lindberg, a high-net-worth business executive.  Doc. 18 at 1–2, 27.  In April 2019, Apex fired Trennepohl who, upon his termination, signed a "Mutual Separation and Release Agreement" ("Separation Agreement").  Doc. 18 at 2, 8; Doc. 18-2 at 2.  By signing the Agreement, Trennepohl promised, *inter alia*, not to disparage Apex or Lindberg.  Doc. 18 at 2; Doc. 18-2 at 6.  The Agreement defined disparagement as "any statement, written or oral, directly or indirectly, which in any way disparages [Apex], or any of its affiliates, or the executives, officers, directors, or shareholders of any of them."  Doc. 18-2 at 6.  The Agreement also specified that if Apex ever prevailed against Trennepohl in a claim for breach of the Agreement, Trennepohl agreed to pay Apex's attorneys' fees and costs incurred in prosecuting such claims.  Doc. 18-2 at 7.  In exchange for signing the Agreement, Trennepohl received a severance payment of $5,416.67.  Doc. 18-2 at 2 (providing only that a severance payment was made, not the amount); Doc. 62 at 6; Doc. 63-1 at 3, 16.

Following his termination, Trennepohl published several Facebook posts about Plaintiffs. Doc. 18 at 9–11.  He referred to his former Apex supervisor using an incorrect and likely insulting name, posted links to negative articles about Plaintiffs, and insinuated Plaintiffs were less-than-honest.  *See, e.g.*, Doc. 18 at 10–11.  When Plaintiffs discovered the posts, their

counsel sent Trennepohl a cease-and-desist letter, asking him to remove the posts and refrain from posting anything similar.  Doc. 18 at 12, 27; Doc. 18-3 at 2.  Instead of complying, Trennepohl posted the cease-and-desist letter to Facebook.  Doc. 18 at 12.  This lawsuit followed.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 55 governs the conditions upon which default may be entered against a party, as well as the procedure for seeking the entry of a default judgment.  A default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by Federal Rule of Civil Procedure 12; (2) entry of default by the clerk of the court when such default is established by affidavit or otherwise; and (3) a plaintiff's motion for default judgment—made to the court if the plaintiff seeks as relief an uncertain sum.  FED. R. CIV. P. 55(a), (b)(2); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  When the claim is for a sum uncertain, the moving party carries the burden of establishing an evidentiary basis for the damages sought, because default judgments do not conclusively establish the amount of damages but only the defendant's liability.  *Mori Seiki USA, Inc. v. McIntyre*, No. 3:06-CV-2344-B, 2007 WL 2584947, at *1 (N.D. Tex. Sept. 6, 2007) (Boyle, J.) (citing *U.S. ex rel M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)).

A defendant's default alone does not entitle a plaintiff to default judgment.  *Lewis v. Lynn*, 236 F.3d 766, 766–67 (5th Cir. 2001) (per curiam) (citing *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).  The decision to grant a default judgment—"a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations"—is soundly within the district court's discretion.  *Id.* (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*,

874 F.2d 274, 276 (5th Cir. 1989)).  Moreover, there must be a sufficient basis in the *well-pled* complaint for a court to enter judgment by default.  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

### IV. ANALYSIS

Plaintiffs allege Trennepohl breached the Separation Agreement and defamed them by publishing the Facebook posts at issue.  Doc. 18 at 15, 19; Doc. 62 at 8.  They ask the Court to enter a default judgment against him and award Plaintiffs actual damages and interest, injunctive relief, and attorneys' fees.  Doc. 18 at 15, 19; Doc. 62 at 13.  In determining such motion, the Court considers: (1) if entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the relief, if any, to which the plaintiff is entitled.  *United States v. 1998 Freightliner*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

### A.  Default Judgment is Procedurally Warranted

A party is in default when he fails to plead or otherwise defend a suit against him.  *See* FED. R. CIV. P. 55(a).  Here, Plaintiffs properly served Trennepohl in 2019, Doc. 20, Doc. 22, after which Trennepohl did not file an answer or other responsive pleading, or otherwise appear in this suit.  There is no evidence that Trennepohl's failure to do so resulted from "good faith mistake or excusable neglect."  *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).  Thus, Trennepohl is in default.

### B.  Plaintiffs Pled a Sufficient Basis for Default Judgment on Their Claims

#### 1.  *Breach of Contract*

Plaintiffs contend Trennpohl violated the Separation Agreement by posting disparaging Facebook posts about Apex and Lindberg.  Doc. 18 at 15; Doc. 62 at 8.  Under Texas law, the elements for breach of contract are: "(1) the existence of a valid contract; (2) performance or

tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by plaintiff as a result of the breach." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021) (quoting *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

Here, Plaintiffs attached a copy of the Separation Agreement to their complaint and their motion for default judgment. Doc. 18-2; Doc. 63-1 at 5–12. The Separation Agreement constituted a valid contract between the parties. Doc. 18 at 15; Doc. 18-2. Plaintiffs' complaint alleges by implication that they performed their part of the contract—paying Trennepohl his severance. Doc. 18-2 at 2; *see Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (holding a complaint need not explicitly state every essential element to warrant awarding default judgment, rather it need only be clear enough that the defendant has notice of the contours of the plaintiff's claim). The complaint also states that the Separation Agreement required that Trennepohl not disparage Plaintiffs but that Trennepohl did so, thereby breaching the contract. Doc. 18 at 2–3, 8–13, 15; Doc. 18-2 at 6. Finally, the complaint pleads that, because of Trennepohl's disparagement, Plaintiffs sustained damages. Doc. 18 at 15 (including "actual damages" and future damages should Trennepohl not be enjoined from continuing the offending conduct).

Plaintiffs' well-pleaded allegations support their breach of contract claim since, at a minimum, they put Trennepohl on notice of the contours of Plaintiffs' claim. Therefore, Plaintiffs' motion for default judgment should be **GRANTED** as to liability for breach of contract.

### 2. *Defamation*

Plaintiffs also allege they were defamed by Trennepohl's Facebook posts. Doc. 18 at 19. Under Texas law, the elements of defamation are: (1) publication of a false statement of fact to a third party; (2) which was defamatory and concerned the plaintiff; (3) negligently made (as to private individuals alleging defamation); and, unless the statements are defamatory *per se*, (4) the plaintiff suffered damages. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 743 (5th Cir. 2019) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)). A statement is defamatory *per se* when it is "so obviously harmful that general damages may be presumed." *Id.* (citing *In re Lipsky*, 460 S.W.3d at 593). This includes statements that (1) accuse someone of a crime; (2) impute a loathsome disease; (3) injure someone's office, business, or profession; or (4) impute sexual misconduct. *Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Because default was entered against Trennepohl, the Court accepts all factual allegations in the complaint relating to his liability for defamation as true. Plaintiffs allege Trennepohl made false statements of fact to third parties by publishing them on Facebook. Doc. 18 at 9–13, 19. Plaintiffs also assert those statements injured their "trade, business, or profession"—or were *per se* defamatory[1]—and that Trennepohl was negligent in making them. Doc. 18 at 19. Because Plaintiffs plausibly alleged the statements were *per se* defamatory, they did not need to demonstrate the fourth element of damages to sufficiently plead their defamation claim. Instead, the Court presumes damages flowed from the statements themselves, analyzed *infra*.

---

[1] Four of the five posts at issue—the September 29, October 3, October 10, and October 17 posts—"tag" the Federal Bureau of Investigation, seemingly suggesting criminal activity from Plaintiffs. Further, most of the posts aver in some way that Apex is lying about its identity as a security company or other details relating to its office or business, also suggesting criminality.

Plaintiffs' well-pleaded allegations support their defamation claim, at least as to defamation *per se*. Thus, based on these admitted allegations and other supporting documentation, the Court concludes the motion for default judgment should be **GRANTED** as to Trennepohl's liability for defamation.

## C. Plaintiffs Are Entitled to Some Relief

A party in default concedes the truth of the allegations in the complaint concerning liability, but not concerning damages. *Mori Seiki USA, Inc.*, 2007 WL 2584947, at *1 (citation omitted). Thus, damages should not be awarded without a hearing or a demonstration by detailed affidavit or documentary evidence. *EMI April Music Inc. v. Rumeurs, Inc.*, 632 F. Supp. 2d 619, 622 (N.D. Tex. 2008) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

The testimony and evidence from the July 21, 2021 hearing in this case and the information in the complaint guide the Court's recommendation. During the evidentiary hearing, Plaintiffs advised they seek total damages of $55,416.67 plus attorneys' fees. Further, Plaintiffs seek injunctive relief and pre- and post-judgment interest. Doc. 18 at 15, 19–23. The Court now considers whether the relief sought is appropriate based on governing law.

### 1. *Actual Damages*

#### a. **Breach of Contract**

Plaintiffs argue they are entitled to actual damages in the amount of $5,416.67 for Trennepohl's breach of the Separation Agreement. In Texas, damages for breach of contract are measured by just compensation for the loss or damage *actually sustained*. *BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 473 (emphasis added) (quoting *Phillips v. Phillips*, 820 S.W. 2d 785, 788 (Tex. 1991)). They aim to "restore the injured party to the economic position it would have been in had the contract been performed." *Turner v. Young*, No. CV H-

7

15-3152, 2017 WL 7513318, at *10 (S.D. Tex. May 18, 2017) (Werlein, Jr., J.). Parties cannot recover under a breach of contract theory for "remote, contingent, speculative, or conjectural" damages. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 278 (5th Cir. 2009) (citation omitted).

In support of their argument, Plaintiffs attach: (1) Trennepohl's signed Separation Agreement, Doc. 63-1 at 6–12, indicating that, "in consideration of [Trennepohl's] acceptance of this Agreement . . . [he] shall be entitled to receive . . . severance pay"; (2) a payroll journal indicating Trennepohl's receipt of this $5,416.67 severance, Doc. 63-1 at 16; and (3) the Declaration of an Apex "Security Lead" stating this amount was paid to Trennepohl as consideration, Doc. 63-1 at 3. Plaintiffs did not mention their intent to seek the severance payment as damages in their complaint. *See* Doc. 18; *Village Bank & Trust, N.A. v. Clean Smiles Dental, PLLC*, No. 3:20-CV-3653-S-BH, 2021 WL 4268283, at *5 (N.D. Tex. Aug. 30, 2021) (Ramirez, M.J.) ("The relief requested in a plaintiff's complaint limits the relief available in a default judgment." (citation omitted)); *see also* FED. R. CIV. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

At the hearing, Plaintiffs reinforced their argument that they are owed the $5,416.67 paid as consideration for the now-breached Separation Agreement but have cited no authority in support of that proposition. Indeed, there is some legal authority to the contrary. Parties claiming breach of contract under Texas law may <u>not</u> do what Plaintiffs attempt to do here— simultaneously seek the enforcement of a contract by means of permanent injunction "while also seeking recovery of consideration [they] paid in performing that contract." *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, 737 F. Supp. 2d 648, 657 (S.D. Tex. 2010) (citing *see Guion v. Guion*, 475 S.W.2d 865, 868 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.) ("The law is well settled that rescission bars the right to compel performance."); *see also Hanks v. GAB Bus.*

*Servs., Inc.*, 644 S.W.2d 707, 708–09 (Tex. 1982) (requiring the buyer of a seller's business to

make the final installment payment even after seller breached the non-compete agreement

because buyer waived any right to partially rescind the contract by treating the contract as

ongoing)).  Just as one party cannot compel the other to pay consideration due on a contract later

found unenforceable, a party cannot seek return of consideration already paid on a contract it is

simultaneously trying to enforce.  *Cf. Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 178 (5th

Cir. 1991) (declining to enforce payment of severance after finding that the contract could not be

enforced).

Because Plaintiffs seek enforcement of the Separation Agreement's terms in the

injunctive relief sought from this Court, they should not be awarded the $5,416.67 severance pay

paid as consideration to Defendant.  Thus, their remedy for breach of contract is limited to the

injunctive relief they seek discussed *infra*.

### b.  Defamation

Plaintiffs request reasonable *per se* damages for the harm caused by Trennepohl's

defamatory statements.  In Texas, there are three available types of damages for claims of

defamation *per se*: "(1) nominal damages; (2) actual or compensatory damages; and (3)

exemplary damages." *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013) (citation omitted).

Although some mental anguish or loss to reputation can be presumed to flow from defamatory

*per se* statements, "the law does not presume any particular amount of damages beyond nominal

damages." *Gjergjani v. Ware*, No. 4:14-CV-00448-ALM, 2016 WL 4545521, at *3 (E.D. Tex.

Aug. 8, 2016) (Nowak, J.); *see also Hancock*, 400 S.W.3d at 65.  An award for damages beyond

a nominal sum—"a trivial sum of money"—must have evidentiary support.  *Hancock*, 400

S.W.3d at 65 (citation omitted); *see also In re Lipsky*, 460 S.W.3d at 593 ("[E]ven though Texas

law presumes general damages when the defamation is *per se*, it does not presume any particular amount of damages beyond nominal damages.  Any award of general damages that exceeds a nominal sum is thus reviewed for evidentiary support." (quotations omitted)).

At the evidentiary hearing, Plaintiffs suggested $50,000 total—$10,000 per defamatory statement—would be a reasonable amount of damages, but Plaintiffs offered no evidentiary support for actual damages, e.g., harm to reputation or mental anguish suffered by Apex or Lindberg.  And at best, Plaintiffs' suggestion of actual harm in their pleadings is either conclusory, anticipatory, or both.  *See* Doc. 18 at 19 ("Trennepohl's statements . . . tend to harm Plaintiffs' reputations.  Trennepohl's statement[s] tend to prejudice Plaintiffs in the operation of, and are necessarily harmful to, Plaintiffs' businesses and their credibility."); Doc. 62 at 10 ("[T]he evidence which Plaintiffs present is some indication that Trennepohl's statements have harmed them."); Doc. 63-1 at 4 ("Apex *will* sustain irreparable harm if Trennepohl's disparaging and false statements are not removed.  Specifically, such statements *stand to cause* Apex, Apex's employees, and Lindberg significant harm to their reputations and professions.  Such damage is particularly exacerbated by the weight such statements carry because Trennepohl is a former security contractor at Apex and for Lindberg." (emphasis added)).

Moreover, each of the four cases Plaintiffs cite in support of their argument for damages involved parties who supplied proof of harm sustained, which justified actual damages awards.  *See In re Perry*, 423 B.R. 215, 274–76 (awarding $10,000 per *category* of defamatory statement to plaintiff whose offers to speak at events were withdrawn and business partnerships were rescinded as a result of defamatory blogs, emails, and conversations); *Southern U.S. Trade Ass'n v. Unidentified Parties*, No. 10-1669, 2013 WL 5506121, at *4 (E.D. La. Sept. 30, 2013) (Fallon, J.) (awarding $50,000 for harm to reputation and for emotional distress to plaintiffs who incurred

expenses for Internet search engine optimization and efforts made to protect their reputations following defamation); *Gamboa v. Grace Paint Co., Inc.*, No. 3:10-CV-416, 2012 WL 774995, at *4, *6 (S.D. Miss. Mar. 7, 2012) (Jordan III, J.) (awarding $20,000 for mental anguish caused by defamatory statements that required plaintiff to seek professional counseling); *Gjergjani*, 2016 WL 4545521, at *4 (awarding damages of $69,000 to a social media influencer who lost sleep, suffered from depression and anxiety, lost business opportunities, and incurred costs trying to mitigate those losses through "internet reputation repair" services as a result of defamation).

Accordingly, because Plaintiffs presented no evidence of actual damages suffered, an award of nominal damages only is appropriate. *See Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017). In light of the foregoing, the Court finds that nominal damages in the amount of $1,000 per defamatory statement, for a total nominal damages award of $5,000, is proper.

### 2. Injunctive Relief

Plaintiffs also ask the Court to order Trennepohl to remove the posts containing the defamatory statements at issue and enjoin him from "republishing any of the defamatory statements, including by reposting them to other websites or social media." Doc. 62 at 11. Plaintiffs are clear that they do not seek to "enjoin Trennepohl from making any future statements." Doc. 62 at 11.

"A federal court sitting in diversity applies the federal standard to determine if injunctive relief should be granted." *Bruckner Truck Sales, Inc. v. Bayou Diesel Servs., LLC*, No. 2:17-CV-0204, 2017 WL 10152283, at *4 (N.D. Tex. Nov. 21, 2017) (Reno, M.J.). Thus, "for a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects." *Dresser-Rand Co. v. Virtual*

*Automation, Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

Plaintiffs seeking a permanent injunction must show: (1) that they have suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that the balance of hardships between plaintiffs and defendant warrants a remedy in equity; and (4) that a permanent injunction would not disserve the public interest. *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 157–58 (5th Cir. 2017) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Failure to sufficiently establish any one of the four factors requires the Court to deny the movant's request for an injunction. *ZeniMax Media Inc. v. Oculus VR LLC*, No. 3:14-CV-1849-K, 2018 WL 4078586, at *1 (N.D. Tex. June 27, 2018) (Kinkeade, J.) (quoting *eBay*, 547 U.S. at 391). Ultimately, whether to grant permanent injunctive relief is a decision in the Court's equitable discretion. *Id.*

Here, Plaintiffs ask for two different kinds of injunctive relief: retrospective relief of removing Trennepohl's published Facebook posts and prospective relief of preventing further dissemination of the content of the already published posts. Doc. 62 at 11.

Here, the Court finds (1) Plaintiffs were successful in establishing the merits of their breach of contract and defamation claims, (2) they were injured as a matter of law by the posts, (3) the injury of leaving the posts outweighs the harm of ordering Trennepohl remove them, and (4) such an order would not disserve the public interest. Thus, Defendants are entitled to an injunction requiring Trennepohl remove his Facebook posts from September 29, October 3, October 4, October 10, and October 17 of 2019. *See* Doc. 18 at 9–13.

A permanent injunction acts as an unconstitutional prior restraint if it enjoins a party from making defamatory statements in the future. *Gjergjani*, 2016 WL 4545521, at *7 (citation

12

omitted).  However, injunctions prohibiting *republishing* statements already deemed defamatory and ordered removed—which includes enjoining the reposting of those statements to other websites—is in line with the constitutional protection against prior restraints.  *Id.* (citation omitted).  Thus, Defendants are also entitled to an order permanently enjoining Trennepohl from republishing any of the at-issue Facebook posts.  Doc. 18 at 9–13.

### 3.  *Pre- and Post-Judgment Interest*

Plaintiffs seek both pre- and post-judgment interest.  Doc. 62 at 13.  Prejudgment interest is calculated under state law in diversity cases.  *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002).  There are two separate bases for awarding prejudgment interest: (1) an enabling statue; or (2) general principles of equity.  *In re Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020).  Because Plaintiffs' claims do not fall within any statutory provisions, prejudgment interest is governed by Texas common law.  Equitable prejudgment interest focuses on the need to compensate a party for the defendant's beneficial use of the damage funds between the time the injury occurred and the time the judgment was rendered.  Here, because it is recommended Plaintiffs be awarded only nominal damages for defamation, there is no need to compensate Plaintiffs for Trennepohl's "beneficial use of the damage funds."

Awarding post-judgment interest is not discretionary, however.  *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456 (5th Cir. 2013).  It *shall* be allowed on any money judgment in a civil case in district court and will be calculated from the date the judgment is entered.  28 U.S.C.A. § 1961.  Federal law applies to "any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship."  *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (cleaned up).  Accordingly, post-judgment interest on Plaintiffs' total award shall accrue at federal rate applicable at the time

judgment is entered. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991)

("direct[ing] the district court to award post-judgment interest on the entire amount of the final

judgment, including damages, prejudgment interest, and attorney's fees").

### 4. *Attorneys' Fees*

Plaintiffs argue that, under the terms of the Separation Agreement, they are entitled to

recovery of their attorneys' fees. Doc. 18 at 15; Doc. 18-2 at 7. The Separation Agreement

specifically provides that "in the event that [Trennepohl] breaches any of the provisions of this

Agreement and [Apex] prevails, [Trennepohl] agrees to pay [Apex's] reasonable costs of

prosecuting such claims, including attorneys' fees and costs." Doc. 62 at 10. Thus, as the

prevailing party here, Defendant Apex is entitled to recover its attorneys' fees and costs.[2]

State law controls both the award of and the reasonableness of fees awarded where state

law supplies the rule of decision. *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir. 2002).

Here, both the breach of contract and the defamation claims arise under Texas law, so Texas law

controls. In adjudicating an award of attorneys' fees in Texas, courts start by multiplying the

reasonable number of hours expended on the case by the reasonable hourly rates for the

participating lawyers. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498

(Tex. 2019). Reasonableness is determined using the *Arthur Andersen* factors.[3] *Id.* The fee

---

[2] "Prevailing" does not require an award of actual damages: A reasonable amount of attorneys' fees may be recovered "in addition to the amount of a valid claim" in which there is a "recovery of money, *or at least something of value*." *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 797 (Tex. App.—Houston [1st Dist.] 2001) (citation omitted) (emphasis in original). Texas courts have upheld awards of attorneys' fees where a party was awarded only injunctive relief, not damages. *Id.* (citation omitted).

[3] These factors include: (1) the time and labor required, the novelty and difficulty of the issues, the requisite skill to perform the legal services properly; (2) whether acceptance of this case will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the result obtained; (5) the time limitations

applicant bears the burden of proof to show sufficient evidence[4] as to both. *Id.* If such evidence

is produced, this amount, the lodestar, is presumed reasonable. *Id.* A court may increase or

decrease this lodestar, but it must be based on specific evidence outside the usual *Arthur*

*Andersen* factors. *Id.* at 501. While the requested fees must bear a reasonable relationship to the

amount in controversy or the complexity of the case, an award is not excessive simply because it

is disproportionate to the results obtained. *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*,

258 F.3d 345, 354 (5th Cir. 2001).

### a. Reasonable Hourly Rates

In establishing reasonable hourly rates, the fee applicant typically submits "copies of

resumes or summaries of the qualifications of attorneys involved in the litigation, as well as

information regarding the individual's litigation skills generally." *S & H Industries, Inc. v.*

*Selander*, No. 3:11-CV-2988-M-BH, 2013 WL 6332993 (N.D. Tex. Dec. 5, 2013) (Lynn, J.)

(citation omitted) ("Generally, the reasonable hourly rate for a particular community is

established through affidavit of other attorneys practicing there" (citation omitted)).

Here, Plaintiffs' counsel submitted affidavits that Counsel Aaron Z. Tobin's hourly rate

was $420 in 2019 and $485 in 2020; that Counsel Michael J. Merrick's hourly rate was $305 in

2019 and $350 in 2020; and that Counsel Forrest C. Robert's hourly rate was $285 in 2021.

Doc. 63-2 at 4; Doc. 105 at 3. Counsels' affidavit stated the requested hourly rates are

reasonable and similar, if not below, hourly rates for similar cases in this District. Doc. 63-2 at

---

imposed by the client or case; (6) the nature and length of the relationship with the client; (7) the
experience, reputation, and ability of the attorneys; and (8) whether the fee is fixed or contingent.
*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

[4] Such evidence includes (1) the particular services performed, (2) who performed the services,
(3) when the services were performed, (4) the reasonable amount of time to perform the services,
and (5) the reasonable hourly rate for each person performing. *Id.*

4–5.  Based on the Court's experience, it finds the rates requested reasonable for attorneys of similar experience in analogous cases litigated within the Dallas-Fort Worth Metroplex.  The Court further notes that counsel's asserted hourly rates are at or below hourly rates deemed reasonable by the Court of Appeals for the Fifth Circuit in the past.  *E.g.*, *Miller*, 716 F.3d at 149 (affirming district court's determination that hourly rates of $577.50, $542.50 and $280 for the three primary attorneys were reasonable).

### b.  Number of Hours

Billing records are "*strongly* encouraged" to prove the reasonableness and necessity of requested fees.  *Rohrmoos Venture*, 578 S.W.3d at 502 (emphasis in original).  Plaintiffs' counsel's first affidavit on the matter of attorneys' fees provided evidence that the case against Trennepohl required 18.3 hours of work in 2019—1.7 from Aaron Z. Tobin and 16.6 from Michael J. Merrick.  Doc. 63-2 at 3, 7–15.  Their second affidavit, provided to the Court following the evidentiary hearing, provides evidence of 8.9 hours expended in 2021—1 by a "CDN," 1.5 by Kendal B. Reed, 2 by Aaron Z. Tobin, and 4.4 by Forrest C. Roberts.  Doc. 105-1 at 11.

Upon review of all of the affidavits and billing records submitted, the Court finds the number of hours expended by Aaron Z. Tobin (before 2021), Michael J. Merrick, and Forrest C. Roberts are supported, reasonable, and necessary for the successful prosecution of this action.  The Court finds that no reduction or increase in this fee is warranted based on the *Johnson* factors.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' *Motion for Default Judgment on Their Claims Against Defendant Trent Trennepohl and Incorporated Memorandum of Law in Support*, Doc.

16

62, should be **GRANTED IN PART** and final judgment should be entered against Defendant

Trent Trennepohl for nominal damages for defamation *per se*, $7,031.00 in attorneys' fees, and

an injunction requiring Trennepohl to remove the Facebook posts at issue in this case and to

refrain from republishing them in any form in the future. As no other claims will remain, this

case should be **CLOSED**.

      **SO RECOMMENDED** on November 3, 2021.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).